Roig, Demandante y Apelante, *v.* Landrau, Demandado
y Apeladó.

Apelación procedente de la Corte de Distrito de San Juan,
Sección Primera, en pleito sobre cobro de dinero.

No. 2518.—Resuelto en enero 23, 1923.

Venta de Cañas—Precio Alzado—Unidad de Medida—Interpretación de Con-
tratos.—La cuestión principal a decidir en este caso es si la venta de 150
cuerdas de cañas que hizo el demandante al demandado y que quedaron re-
ducidas a 127, según demostró la mensura practicada por un perito nombrado
por la corte, se realizó a precio alzado o por unidad de medida. En los au-
tos figura una carta del demandante al demandado en la que expresa que de
acuerdo con los deseos de éste procedió aquel a medir las plantaciones de
cañas objeto del litigio, cuya mensura arroja un aumento de 1 cuerda 76
centavos, que espera el demandante le será liquidada lo antes posible. *Se
resolvió:* que esta interpretación dada por el propio demandante al contrato
por él celebrado disipó cualquier duda que de otro modo podría haber existido
en cuanto a la verdadera intención de las partes expresada en forma algo
vaga y ambigua en el documento notarial y bastó para sostener la teoría
del demandado de que la venta se hizo a un tanto por unidad de medida.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. F. González* y *J. Ruiz de
Val.*

Abogados del apelado: *Sres. E. Campillo* y *J. Martínez
Dávila.*

El Juez Asociado Sr. Hutchison, emitió la opinión del
tribunal.

En un documento notarial hizo constar Manuel Roig que
como arrendatario de cierta finca había sembrado 150 cuer-
das, más o menos, de caña de azúcar y convenido con Pablo
Landrau en celebrar un contrato de compraventa de la rese-
ñada plantación de cañas.

La parte substancial del convenio como se consignó por
escrito en tanto es pertinente a la cuestión sometida ahora
a nuestra consideración, está comprendida en las siguientes
cláusulas:

Primera: El señor Roig Hernández en el carácter en que
concurre, desde este momento vende al señor Landrau Díaz la rese-
ñada plantación de caña de azúcar, la cual toma el comprador sobre

.la base de un promedio de trescientos diez quintales por cuerda, o sea, por dos mil trescientas veinte y cinco toneladas de caña.

"Segunda: Si al ser cortadas dichas cañas resultase que el promedio por cuerda es menor del establecido y que en conjunto no alcanza a las dos mil trescientas veinte y cinco toneladas de caña, tal déficit irá en contra del señor Landrau Díaz, quien sufrirá el perjuicio correspondiente sin ningún derecho a reclamar ni rebajar nada del importe que debe pagar al promedio de trescientos diez quintales por cuerda establecido. Pero si el promedio fuese mayor que el establecido entonces tal exceso será a beneficio del comprador y no podrá el vendedor reclamar nada por el mismo.

"Cuarta: El precio fijado a esta venta de la plantación de cañas que a su vez es la consideración del contrato de sub-arrendamiento, es el que tenga en el mercado de mil novecientos veinte, según se vayan liquidando las cañas entregadas a la Central Vannina en la forma establecida por la costumbre.

"Sexta: Queda en virtud de la presente obligado el señor Landrau Díaz a pagar preferentemente el crédito que a su favor tiene sobre las cañas el Banco Comercial de Puerto Rico en la forma estipulada en la reseñada escritura de crédito refaccionario.

"Séptima: Mientras no pague el señor Landrau Díaz al señor Roig Díaz el importe a que montasen las 2325 toneladas de cañas que por la presente compra, quedarán las mismas afectas a dicho importe, por cuya razón no podrá disponer dicho señor Landrau Díaz de lo que produjesen, sin el previo consentimiento escrito del vendedor. Para los efectos consiguientes, bastará esta escritura para que la Central Vannina se abstenga de hacer entrega alguna de las liquidaciones de dichas cañas, por una suma mayor que los $6,000 que como crédito preferente debe pagar el señor Landrau Díaz al Banco Comercial de Puerto Rico antes reseñado.

"Octava: Dichas cañas son vendidas sobre una base de 7½ por ciento de azúcar que el señor Roig garantiza al señor Landrau, mas si la Central Vannina concediese o acordase hacer un aumento del tanto por ciento de azúcar, tal aumento será para beneficio exclusivo del señor Landrau.

"Novena: Todos los gastos de corte, arrastre, conducción, etc. y demás incidentales a la molienda de dichas cañas serán de la exclusiva cuenta del señor Landrau Díaz, sin que por ello pueda descontar nada del importe de las 2325 toneladas de caña, pero el señor Roig conviene en ayudar al señor Landrau con la suma de $500 para tales gastos.

"Décima: Toda depreciación, deterioro, rebaja, pérdida, o destrucción de las cañas objeto de este contrato será por cuenta del comprador, Sr. Landrau Díaz, quien desde este acto toma posesión de la finca con las cañas objeto de esta venta."

En una acción en la cual está envuelta la cuestión de un supuesto saldo a favor del demandante como vendedor, el demandado Landrau radicó una contrademanda y obtuvo sentencia de acuerdo con la misma por la suma de $2926.46 y costas.

De la opinión emitida por el juez sentenciador hacemos las siguientes citas:

"Celebrado el juicio y practicada la prueba, hemos llegado a la conclusión de que el demandado por la escritura de venta de cañas y subarrendamiento de finca rústica, otorgada en 3 de enero de 1920, compró al demandante una plantación de cañas dulces, bajo la base de un promedio de 310 quintales de cañas por cuerda, siendo el precio de la venta el que tenga en el mercado de mil novecientos veinte. Que de la prueba, y sobre todo de la mensura practicada, resulta que no existían en la finca 150 cuerdas de cañas sembradas, y sí ciento veinte y siete.

"Que según se comprueba por las liquidaciones efectuadas por la Central Vannina donde se entregaron y molieron las cañas, arrojan un promedio de $1.09 con 176 milésimas por cada quintal de caña de azúcar entregada, siendo el número de quintales que entregó el demandado, el de 36,520 por la plantación, y estando obligado a entregar 39,472.61 quintales, ha dejado de entregar según los términos del contrato, 2,952.61 quintales que importan $3223.54.

"Resulta asimismo de la prueba, que el demandado, antes de que comenzara el corte de las cañas hizo al demandante un préstamo de $6000.00, al interés de 9% anual, cuya suma venía obligado el demandante a entregar al demandado con el importe del exceso que obtuviera de las cañas vendidas, una vez deducidos los 310 quintales que correspondieran por cuerda, cuya suma, con los intereses de cinco meses, hace un total de $6450.00, deduciendo de esa suma la cantidad de $3223.54 a que asciende el déficit de las cañas, y deduciendo $300.00, importe de un cheque que el demandante entregó al demandado, resulta que el demandante adeuda al demandado la suma de $2926.46."

El demandante establece apelación e insiste en los siguientes errores:

"Primero, que la sentencia en cuanto declara sin lugar la demanda es contraria a la prueba;

"Segundo, que aún admitiendo que la venta se hizo a un tanto por unidad de medidas o número, la Corte cometió error al estimar probado que no existían en la finca 150 cuerdas de cañas sembradas y sí 127;

"Tercero, que la Corte cometió error al estimar que el demandado hizo un préstamo de $6,000 al demandante;

"Cuarto, que la Corte cometió error al declarar con lugar la contrademanda, pues la sentencia en cuanto a ese particular no está sostenida por la evidencia."

Los artículos 1248, 1249, 1250, 1372, 1373 y 1374 del Código Civil prescriben lo siguiente:

"Artículo 1248.—Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes se estará al sentido literal de sus cláusulas.

"Si las palabras parecieran contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas.

"Artículo 1249.—Para juzgar de la intención de los contratantes deberá atenderse principalmente a los actos de éstos coetáneos y posteriores al contrato.

"Artículo 1250.—Cualquiera que sea la generalidad de los términos de un contrato no deberán entenderse comprendidas en él cosas distintas y casos diferentes de aquellos sobre que los interesados se propusieron contratar.

"Artículo 1372.—La obligación de entregar la cosa vendida comprende la de poner en poder del comprador todo lo que exprese el contrato, mediante las reglas siguientes:

"Si la venta de bienes inmuebles se hubiese hecho con expresión de su cabida, a razón de un precio por unidad de medida, o número, tendrá obligación el vendedor de entregar al comprador, si éste lo exige, todo cuanto se haya expresado en el contrato, pero si esto no fuere posible, podrá el comprador optar entre una rebaja proporcional del precio, o la rescisión del contrato, siempre que en este último caso, no baje de la décima parte de la cabida la disminución de la que se le atribuyera al inmueble.

"Lo mismo se hará aunque resulte igual cabida, si alguna parte de ella no es de la calidad expresada en el contrato.

"La rescisión, en este caso, sólo tendrá lugar a voluntad del comprador, cuando el menos valor de la cosa vendida exceda de la décima parte del precio convenido.

"Artículo 1373.—Si en el caso del artículo precedente, resultare mayor cabida o número en el inmueble que los expresados en el contrato, el comprador tendrá la obligación de pagar el exceso de precio si la mayor cabida o número no pasa de la vigésima parte de los señalados en el mismo contrato; pero si excediese de dicha vigésima parte, el comprador podrá optar entre satisfacer el mayor valor del inmueble o desistir del contrato.

"Artículo 1374.—En la venta de un inmueble, hecha por precio alzado y no a razón de un tanto por unidad de medida o número, no tendrá lugar el aumento o disminución del mismo, aunque resulte mayor o menor cabida o número de los expresados en el contrato.

"Esto mismo tendrá lugar cuando sean dos o más fincas las vendidas por un sólo precio; pero si además de expresarse los linderos, indispensables en toda enajenación de inmuebles, se designaren en el contrato su cabida o número, el vendedor estará obligado a entregar todo lo que se comprenda dentro de los mismos linderos, aún cuando exceda de la cabida o número expresados en el contrato; y si no pudiere, sufrirá una disminución en el precio proporcional a lo que falte de cabida o número, a no ser que el contrato quede anulado por no conformarse el comprador con que se deje de entregar lo que se estipuló."

El apelante, al señalar la identidad que existe entre el artículo 1374, *supra,* y el 1471 del Código español, hace la siguiente cita del tomo 10, Comentarios de Manresa:

"De los términos del contrato se deducirá si los interesados compraron y vendieron respectivamente unidades de medida o número, o si, por el contrario, contrataron no sobre esas unidades ni sobre cosa determinada por el número de ellas, sino sobre cosa cuya determinación dependía de sus límites. Esto es al cabo un problema de prueba, pues lo constituye una apreciación de los hechos realizados por las partes, de los cuales se ha de inferir cuál fué su propósito.

"En la entrega de cuerpos ciertos pueden ocurrir dos casos: o que el cuerpo cierto se entregue en la forma y de la manera estipuladas, esto es, entregándose todo lo comprendido dentro de los

linderos, ya que la integridad de lo que éstos contienen es lo que caracteriza el cuerpo cierto; o que en la entrega se lesione esa integridad dejando de poner en posesión del comprador algo de lo que los linderos comprendan. Estos dos casos son los que el Código ha tenido en cuenta, si bien, en nuestra opinión, no se ha expresado para distinguirlos con la suficiente claridad; de aquí que el artículo sea a primera vista de difícil inteligencia.

"Entendido así el precepto, su motivo es claro y su aplicación no puede ofrecer dudas. Se trata de cuerpos ciertos; el cuerpo cierto, y no el número de unidades que lo constituya, es la causa del contrato y lo que debe ser entregado; el precio se fijó con relación a él, y, por lo tanto, su mayor o menor cabida no puede influir en el aumento o disminución del precio estipulado. Acaba de entenderse la razón del precepto teniendo en cuenta que el Código ha considerado con muy buen sentido, que tan cuerpo cierto es para los efectos de que tratamos una finca sóla, que dos o más, siempre que éstas se vendan por un sólo precio que tenga la cualidad de alzado, y no a razón de un tanto por unidad de medida o número."

Después de una mensura de la superficie en cuestión practicada debido a haberse alegado un déficit, anunció el demandante haber comprobado un exceso sobre las 150 cuerdas referidas en la escritura y exigió el pago de un saldo, incluso una suma calculada sobre la base de dicho exceso.

Sin duda que esta interpretación dada por el propio demandante al contrato por él celebrado fué de gran importancia para el juez sentenciador, disipó cualquier duda que de otro modo podría haber existido y bastó para inclinar el criterio de la corte inferior a favor del demandado sobre la cuestión principal. Dentro de las circunstancias, y examinando la prueba a la luz del texto legal que acabamos de citar, es difícil eludir la conclusión a que claramente ha llegado la corte de distrito de que el relato que hizo el demandado de la transacción revelaba la verdadera intención de las partes, expresada en forma algo vaga o ambigua en el documento notarial.

La prueba en cuanto a las demás cuestiones envueltas era

contradictoria y no vemos que exista un error tan manifiesto en su apreciación que requiera la revocación de la sentencia.

Debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Franco Soto no intervino en la resolución de este caso.